UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
TERRY KEEBAUGH,

                              Plaintiff,

              -against-

**ORDER**

18 Civ. 12126 (CS)(JCM)

INTERNATIONAL BUSINESS MACHINES
CORPORATION,

                            Defendant.
-----------------------------------------------------------X

On January 31, 2020, Defendant International Business Machines Corporation ("IBM" or "Defendant") filed a letter motion objecting to Plaintiff Terry Keebaugh's ("Plaintiff") request to depose Defendant's Chief Executive Officer ("CEO") Ginni Rometty ("Rometty") and Chief Human Resources Officer ("CHRO") Diane Gherson ("Gherson") prior to deposing other witnesses. (Docket No. 55). On February 5, 2020, Plaintiff filed a letter in response, arguing that Rometty and Gherson have relevant knowledge concerning the alleged "discriminatory plan that led to plaintiff's firing," and that Defendant did not offer any evidence rebutting this fact or that otherwise militates in favor of delaying their depositions. (Docket No. 56).

**I. BACKGROUND**

**1. Facts**

Plaintiff commenced employment with IBM in 1984 as a marketing representative, and eventually rose through the ranks to the position of Client Director. (Docket No. 1 ¶¶ 13, 20). Despite strong work performance from 2007 until 2015, Plaintiff was terminated on November 30, 2016 at the age of 55. (*Id.* ¶¶ 13, 27-29). Plaintiff claims that her termination was the byproduct of "age-based 'reorganizations'" that began in 2012 when Rometty replaced Sam

Palmisano as Defendant's CEO. (*Id.* ¶¶ 35-36). Plaintiff claims that Rometty created the "Millennial Task Force" in order to meet the goal of a "workforce comprised of 75% millennials." (*Id.* ¶ 37).

Plaintiff claims, for example, that these "age-based 'reorganizations'" resulted in biannual layoffs of "thousands of high performers over the age of 50" under the guise of a "skills transformation." (Docket No. 54 ¶¶ 37-38, 40). Plaintiff further alleges that despite her role in the creation of Cognitive Solution, a database used to train and assist new hires, (*id.* ¶¶ 54-59), she was terminated as part of a "Skills Transformation Plan." (*Id.* ¶¶ 66-69). During a conversation with her supervisor, J. Casey George, Plaintiff claims that George informed her that she was being terminated "because of her lack of skills." (*Id.* ¶ 72). Plaintiff unsuccessfully appealed her termination through Defendant's internal appeal procedures. (*Id.* ¶¶ 74-78). Plaintiff further sought additional information concerning her termination from Stephen Leonard, the General Manager of IBM North America, but he informed her that after reviewing her appeal, he saw no issues with her termination and the decision was final. (*Id.* ¶¶ 84-86). Plaintiff claims that she was replaced by a less senior individual who struggled with aspects of the job. (*Id.* ¶¶ 90-96).

**2. The Parties' Letters**

Defendant objects to Plaintiff's request that she depose Rometty and Gherson prior to deposing other lower-level executives. (Docket No. 55). While Defendant does not appear to deny that Rometty and Gherson have *some* relevant knowledge,[1] Defendant nevertheless insists

---

[1] Defendant also did not submit affidavits from either Gherson or Rometty wherein either individual denied having any relevant knowledge.

that other lower-level employees on Plaintiff's own tentative deposition list[2] either have more direct knowledge or should be deposed prior to deposing Rometty and Gherson. (*Id.*).

Plaintiff claims that because Gherson and Rometty were "architects and/or approved of IBM's systematic effort to create a younger workforce," she should not be required to depose more junior individuals prior to taking Gherson's and Rometty's depositions. (Docket No. 56). In support of this position, Plaintiff presents evidence that Rometty acknowledged her involvement in the "Skills Transformation Plan" during an interview and "pushed" for broad changes to IBM's workforce. (*Id.* 2). Plaintiff further alleges that Gherson was at the "forefront" of the plans to transform Defendant's workforce, and that the District Court in *Langley v. Int'l Bus. Machs. Corp.*, No. A-18-CV-443-DAE, "specifically held in denying summary judgment that Gherson's statements supported age bias." (*Id., see also* Plaintiff's Exhibit D at 8).

## II. DISCUSSION

"The Federal Rules set very liberal limits on the scope of discovery. A party may inquire about 'any matter, not privileged, that is relevant to [a] claim or defense[,]' and '[f]or good cause, the court may order discovery of any matter relevant to the subject matter involved in the action.'" *Vaigasi v. Solow Mgmt. Corp.*, 11 Civ. 5088 (RMB)(HBP), 2016 WL 616386, at *16 (S.D.N.Y. Feb. 16, 2016) (quoting Fed. R. Civ. P. 26(b)(1)) (alterations in original). Mindful of these broad discovery parameters, "[w]hen considering whether to allow the deposition of a corporate executive, the Court must 'begin with the proposition that plaintiff[] ha[s] no burden to show that the deponents have any relevant knowledge.'" *Hallmark Licensing, LLC v. Dickens, Inc.*, 17-CV-2149 (SJF)(AYS), 2018 WL 6573435, at *5 (E.D.N.Y. Dec. 13, 2018) (quoting *In*

---

[2] *See* Defendant's Exhibit B, which sets forth Plaintiff's tentative deposition list and includes several individuals in addition to Rometty. This list, however, does not include Gherson.

*re Garlock*, 463 F. Supp. 2d 478, 481 (S.D.N.Y. 2006)). While "[h]igh ranking corporate executives are not automatically given special treatment which excuses them from being deposed," *Treppel v. Biovail Corp.*, No. 03 Civ. 3002 PKL JCF, 2006 WL 468314, at *1 (S.D.N.Y. Feb. 28, 2006) (alterations added) (quoting *Gen. Star Indem. Co. v. Platinum Indem. Ltd.*, 210 F.R.D. 80, 83 (S.D.N.Y. 2002)), courts in this circuit have "recognized an additional layer of protection for senior corporate executives subject to depositions." *Hallmark Licensing, LLC*, 2018 WL 6573435, at *5 (collecting cases).

Thus, "[w]hen considering whether to allow the deposition of a corporate executive, courts consider the likelihood that the individual possesses relevant knowledge and whether another source could provide identical information." *Treppel*, 2006 WL 468314, at *2 (alterations added); *see also Gen. Star Indem. Co.*, 210 F.R.D. at 82–83 ("Courts have granted protective orders for high-level executives where a party seeking to take a deposition had not yet attempted to obtain information from lower level executives…where high-level executives plainly had no knowledge of the facts…or where the deposition was solely sought to harass the executive") (internal citations omitted). In addition, the party seeking to preclude the deposition bears the burden of proof. *See Vaigasi*, 2016 WL 616386, at *17 (citing *Penn Grp., LLC v. Slater*, 07 Civ. 729 (MHD), 2007 WL 2020099, at *13 (S.D.N.Y. June 13, 2007)).

Defendant does not categorically deny that Rometty and Gherson may have unique, non-duplicative information, but rather asserts that Plaintiff should depose other witnesses prior to seeking their depositions. (Docket No. 55). Plaintiff argues that there is "no reason to delay" the depositions because she has "alleged facts concerning widespread corporate policies [and] decisions about a company's development," as well as specific facts pertaining to both Rometty's and Gherson's involvement in these policies. (Docket No. 56). On the record

presently before the Court, Defendant's motion to delay Rometty's deposition is granted, but its motion to delay Gherson's deposition is denied.

While Plaintiff presents allegations in the Complaint concerning Rometty's involvement in the "Skills Transformation Plan," "age-based 'reorganizations,'" and creation of the "Millennial Task Force," (Docket No. 1 ¶¶ 2, 5, 36-37), the Complaint does not demonstrate that she has unique knowledge that is not otherwise possessed by lower-level executives. The exhibits submitted by Plaintiff further confirm this fact. Specifically, although the e-mails exchanged between Rometty and Stephen Leonard, General Manager of IBM North America, establish that Rometty was on notice that plans were being implemented, the e-mails do not demonstrate that Rometty's testimony concerning these plans would differ substantially from Leonard's or other individuals referenced in the e-mails. (Plaintiff's Exhibits A through C). Additionally, the record demonstrates that at least three other individuals were more directly involved in Plaintiff's termination, and would be in a better position to testify to how Plaintiff was impacted by the alleged "Skills Transformation Plan" or "Millennial Task Force." These individuals include: (1) J. Casey George, Plaintiff's former supervisor who informed her that she would be terminated, (Docket No. 1 ¶¶ 66-73); (2) Sherry Lautenbach, Plaintiff's former manager with whom she discussed her termination and internal appeal, (*id.* ¶¶ 74-78); and (3) Leonard, whom Plaintiff alleges made some inquiries into the reasons underlying Plaintiff's termination, and relayed his findings to her, (*id.* ¶¶ 84-86). Further, as Defendant notes, these three individuals all appear on Plaintiff's tentative deposition list. (Docket No. 55 at 2; *see also* Defendant's Exhibit B).

While Rometty may have specific knowledge concerning the plans referenced in the e-mails, and may be able to provide unique, non-duplicative testimony regarding the

development of the "Skills Transformation Plan" and "Millennial Task Force," on the record before the Court, she does not appear to possess information that would substantially differ from other lower-level IBM employees. Thus, while Defendant's motion to *delay* the deposition of Rometty is granted, Plaintiff may take Rometty's deposition upon "develop[ing] a foundation for the belief that [Rometty] posses[es] personal, non-duplicative knowledge of relevant facts." *Treppel*, 2006 WL 468314, at *3 (while several facts "weigh[ed] in favor of" permitting the plaintiff to depose the CEO and a member of the board of directors, the court delayed these depositions because the plaintiff did not attempt to depose other lower-level executives, and otherwise failed to demonstrate that the sought-after individuals had personal or unique knowledge).

However, Plaintiff has sufficiently demonstrated that Gherson has unique knowledge concerning the implementation of the workforce reorganization. Specifically, Plaintiff provided an excerpt from a deposition in *Conrey v. IBM*, No. 17-817, wherein the witness, Denise Williams – ostensibly an HR executive with IBM – was informed by Gherson during a meeting that IBM wanted to "bring in…fresh talent," including "early career professionals," whom the witness understood to mean "people…under the age of 30 in the vast majority of cases." (*See* Plaintiff's Exhibit E). Plaintiff also provided an excerpt from the summary judgment decision in *Langley v. IBM*, where Gherson's quote describing the "skills" millennials bring into the workforce played, at least some part, in the plaintiff establishing a *prima facie* case of age discrimination. (*See* Plaintiff's Exhibit D at 8-9). Thus, while Defendant may be correct that there are individuals who have more direct knowledge concerning the frontline implementation of, for example, the Millennial Task Force, Plaintiff has "offered sufficient evidence to support an inference that [Gherson as the CHRO]…would have some unique and personal knowledge

6

concerning [IBM's] rationale behind" the implementation of the alleged "age-based 'reorganizations'" and "Millennial Task Force." *AngioDynamics, Inc. v. Biolitec, Inc.*, 1:08-CV-004 (LEK/RFT), 2010 WL 11541925, at *5 (N.D.N.Y. Sept. 17, 2010). Accordingly, Defendant's request to delay Gherson's deposition is denied, and Plaintiff may depose Gherson at any point during fact discovery.

In an effort to ensure that the parties are able to complete all depositions in a timely fashion, and to ensure that Plaintiff has adequate time to develop a record sufficient to demonstrate that Rometty has non-duplicative information, the Court, *sua sponte*, extends the fact discovery deadline until April 10, 2020.

### III. CONCLUSION

In conclusion, Defendant's motion is granted in part and denied in part. The Court grants Defendant's request to delay Rometty's deposition until after Plaintiff takes other depositions and establishes that Rometty has personal, non-duplicative information. The Court, however, denies Defendant's request to delay Gherson's deposition. If any issues arise concerning deposing Rometty that the parties are unable to resolve after meeting and conferring, the parties must bring that issue to the Court's attention by March 13, 2020 by joint-letter motion, with each side outlining their respective positions.

The Clerk is respectfully requested to terminate the pending motion (Docket No. 55).

Dated: February 18, 2020
      White Plains, New York

**SO ORDERED:**

_____
JUDITH C. McCARTHY
United States Magistrate Judge